Thank you, Your Honor. This case is on a Terry stop that occurred in Boise, Idaho. The district court's ruling in this case was the officer, in this court's opinion and finding, and based on his own testimony, did not believe that this object was a weapon. Based upon the court's finding, we believe that his ruling not to suppress the controlled substance was incorrect. The record shows that the officer reached in three times to touch the object, and each time could not identify it as a weapon, and also that he could not identify it as controlled substances. The court's ruling in this case was that the officer did not believe that this object was a weapon, and that he could not identify it as a weapon. He ruled out the possibility that it's a weapon, or he just doesn't know what it is, including the possibility that it may be a weapon of some sort. I think when you look further into the record, the officer ruled out that it was a weapon. He said it wasn't a gun, a knife, a baton, pepper spray. Well, what do you make of his later statements when he says, well, you know, this is after 9-11, and there's – he didn't use those words, but he used, you know, white powder, anthrax, or whatever. I think the anthrax – What do you – what does that – does that – does his concern change things at all? I don't believe so, because in this case, the district court found, based on officer's testimony, that the officer did not believe it was a weapon at all. The court's finding in this case was the officer did not believe it was a weapon, and that's at page 75 in the transcript. All of this is taking place very quickly, as I gathered from the testimony. Absolutely. It was very quick. But at each time, the officer took the time to do a search or a pat-down of the area he was concerned. We're not arguing that he couldn't do that. Certainly he could. But when he did that pat-down and wasn't able to identify it, even after three touches, the reason for the Terry stop and frisk has evaporated, essentially. He couldn't identify it as a weapon. He didn't think – or he didn't articulate any reason why he thought it was a weapon after the third touch. And he could not identify it as contraband under Dickerson. And so the reason for the touch, the reason for the search goes away, even though the officer may be equivocal at times. In this counsel, the reason for the search is based on the suspect's repeated failure to follow the officer's instruction to keep his hands out of the pocket. We have a police officer who's told the defendant, now defendant, the then suspect, to keep his hands out of his pocket. The man keeps going back to his pocket. For his own safety, need not the officer find out what is in that pocket, what is in that bulge, to make sure that it's not going to affect his safety? He should. And he did in this case. He – each time that the defendant put his hand back into that jacket pocket, the officer reached out and touched. And the last time, he actually goes inside the pocket to feel the item. But each time, he couldn't – the officer could not identify it as a weapon. Of course, he couldn't identify it as a gun or what we might call as a weapon. But as Judge Pye says in post-9-11 times, we don't know what is a weapon. It could be some sort of a powder, some sort of a gas, some sort of something that might injure him. And he doesn't know what it is. And the man keeps going back to it. Even though he's told, don't put your hands in the pocket. I want to see your hands with me. He keeps going back to his pocket. Isn't that sufficient – suspicious circumstance for the officer to say, I want to see what's there? It's suspicious circumstances for the officer to continue the Terry pat-down. As the district court found, the officer did not believe it was a weapon after each of the pat-downs through the entire stop. And that factual finding, I think, is correct based on the record. But he didn't know what it was. He knew it wasn't the normal type of weapon, but he didn't know what it was. And the man kept going back to his pocket time after time after being told, keep your hands in view. Obviously, keeping hands in view is a matter for safety for the officer, correct? Absolutely. And he wouldn't do that. And he was telling him, keep your hands in view, in other words, for him to be safe, for the officer to be safe. Why isn't the officer justified and reasonable under the circumstances in thinking that when a man puts his hand back in his pocket, that starts to create a danger? And the remedy for – or the officer can then take the step of the pat-down to see if he can feel the object and make a determination. As long as the pat-down shows it's a lump in there, the officer is not entitled to find out what that lump is as far as his own safety is concerned. Had the officer said, I thought it was a weapon, I couldn't – I couldn't rule out the weapon of – He says, I don't know what it was. But the man kept going back to it when I told him to show his hands. He was not following my instructions regarding my security. He kept going back to something that I didn't know what it was. Under those circumstances, isn't the officer reasonable in saying, I've got to rule out that it is a weapon of some sort? And the district court found that he did. The district court's finding on page 75 was – Page 75. Was – The same candidness and credibility of the court to accept the truthfulness of this officer's statement when he states, I didn't know what it was. Right? And this distinction between the officer did not believe it was a weapon anymore and he was continuing the search to find out what it was. Even with reaching in and feeling the bag and feeling the object or the lump, he couldn't identify it as controlled substances. He couldn't identify it at all until he reaches in, pulls it out, looks at it, and then makes a determination. So I think the distinction is up through the Terry stop. The court – the district court found the officer did not believe it was a weapon. Well, but, you know, he was – maybe this is contradictory. Maybe not. Maybe it can be reconciled. But on the very next page, on line 21, this is what the court says. But Terry also stands for the proposition now with anthrax and other vials and smallpox, with all the concerns that have been raised that where you have a sudden and aggressive movement in reaction to questioning, that the officer has a right to go into that specific area so long it's not a generalized search. In other words, I think, you know, when he speaks of earlier on page 75 of weapons, you know, he's differentiating that from anthrax and smallpox and other kinds of things that could be carried in the pocket but, you know, don't have the feel of a traditional weapon. Isn't that a reasonable interpretation of that finding? I would have to respectfully disagree. I think once the officer made the determination that it wasn't a weapon, it's the court that comes and says, well, it could have been something else. It could have been a powder. There's nothing in the testimony that indicated the officer believed it was some type of a biochemical or agent in that regard. He was concerned about his safety. He did a Terry stop and frisk for his safety. He determined it was not a weapon, and he could not determine that it was contraband with the three touches. You've got about a minute and a half left. Why don't you save it for rebuttal? Thank you very much, Your Honor. Good morning, Your Honor. Lynn Lamprecht on behalf of the United States. Although counsel for the defendant, Mr. Molina, argues that the district court found that he did not believe it was a weapon, I think that finding, as Judge Bea has pointed out, needs to be read in context. Although he said it didn't believe that it was a weapon, the judge said he found that the officer didn't believe it was a weapon. The judge also said that he found that he didn't know what it was, and that yes, sir. And the record which shows that the officer thought that what was in the shirt was dangerous. I would like to point out some of the officer's testimony surrounding this incident. He says that it caused the fact that the page was. I'm sorry. I don't have the pages. It would be the officer's testimony. I just highlighted some things, if you will permit me, without the pages. The officer on direct examination was asked what caused him concern when Mr. Molina jammed his hands back in his pocket. He said it was not a normal, obvious move. It appeared he was trying to conceal something. The officer went on to say he didn't know what he was concealing. He testified that it was always a concern when people are making moves that are not normal moves. The officer testified that he was standing within arms. He never explained what he meant by what is a normal move. Well, no, he didn't, Your Honor. But I think that if somebody asks you your name and you jam your hands into your pocket, that's probably, if you look at the factual situation, I think you can see what he meant. And then when he took, he's asking. Something odd about that is the officer told him to keep his hands visible. The officer asked him to take his hands out of his pocket, and he did. And before the officer could even finish the next question, he jammed them back in again. And the officer reached out and grabbed his hands in the pouch, and he felt a hard object in his hands, and he removed his hand. And he said, would you show me what you have in your pocket? Obviously, he was concerned. And at that point. Well, but you don't know what his concern was. It could have been a concern with drugs. He said he was concerned for his safety, Your Honor. He said he didn't know what it was. Where does he say that? I don't know that he. Well, as I said, throughout his testimony. That's your speculation. The officer said that he was standing within arm's reach, and he knew that his life could be in danger. He said that he didn't think it was a gun, but he didn't know what it could be because of what was going on in the country, and because of different officer safety bulletins that he had received. And I might point out, Your Honor, that this is not a subjective test here. This is an objective test that we're looking at. And I would say that any reasonably prudent officer in this circumstance would be concerned for his own safety because a man within arm's reach of him was reaching into his pockets aggressively, suddenly, and for no good reason. But he knows it's not a weapon. Well, the judge found that he didn't believe it was a weapon. Right. But he also found that he didn't know what it was. I know. So it could, you know, it could be, you know, it could be drugs. It could be. It could be. But it's not a weapon. What's the safety concern? Your Honor, I think that what the judge was saying, it's not a traditional weapon because of the context of his ruling. He says that it's not he didn't he didn't think the officer believed it was a weapon, but he didn't know what it was, and he believed that the officer was concerned because of other things that were going on in the country. But I guess now, let me ask you, you're not suggesting, are you, that now, past 9-11, that we should now read Terry to allow the scope of a Terry search to let them empty out their pockets, defend the suspect's pockets, just to make sure that it's not anthrax or some other powdery, dangerous substance? Your Honor, if you go back to, I believe it's 1979, United States v. Thompson, this Court has ruled on a situation very much like this before 9-11, long before 9-11, and that was simply where a man continued to reach for his pocket, even though after not being asked to by the officer, and the officer couldn't tell by feeling the bulk in his coat what it was and did not know what the object was, he was allowed to reach in. And the officer ruled out the possibility that it was a weapon. No, he had not. But he didn't know what it was. He didn't know. He simply didn't know what it was, just like the officer in this case. The officer here testified that he ruled out that it wasn't a gun. No, sir, he did not. He ruled out that it wasn't a knife. He ruled out that it wasn't a mace. He ruled out that it was the other one, pepper spray. Pepper spray. He said it wasn't a weapon. Every time he was asked, was it a gun, was it a knife, was it pepper spray, his answer was, no, it wasn't a gun. I didn't know what it was. No, it wasn't a knife. I didn't know what it was. No, it wasn't pepper spray. I didn't know what it was. It was clear that he was concerned, and given the circumstances, the government would argue, when this defendant makes sudden and aggressive movements towards the pocket with his hands, towards a specific part, the officer has an – any officer has an absolute right to be concerned for his own safety and to secure the situation. He didn't do a general search of this person. He simply went into his pocket. What characterization is it, by the way, to call that aggressive, to put your hand in your pocket? Actually, it was Judge – it was Judge Carter who said it was a sudden and aggressive movement. Not necessarily aggressive to put your hand in your pocket, is it? I think – no, it wouldn't be. But in this case, the officer testified that it was an abnormal and a sudden movement, and it was irrational in response to what was going on when the man was simply being asked his name and where he had been traveling. Can I ask you once again to give – Yes, sir. – a place in the record where the officer states that he was concerned for his safety when he felt there was an unknown lump in the shirt? Or are you saying that the circumstances are such that a reasonable magistrate or a reasonable judge would conclude that under those circumstances, he – the officer would be in fear of his safety? Is that your point? Or is there some express question and answer that you want us to go to? There is no express question and answer, but throughout the officer's testimony, he points out that his training for officer safety is to make sure that someone's hands are in view at all times. If someone's within arm's reach, his life could be in danger. He was concerned when people like this person makes moves that are not normal moves. And he said, everything was happening so quick that I just know that it was not a normal movement. And I think probably the closest thing would be when he testified that I didn't think it was a gun, but I didn't know what it could be because of what is going on in the country and different officer safety bulletins have been received by their office. And that's not normal movement, is it? He's told men repeatedly, I want to see your hands, I want to see your hands, and he goes back in. And he keeps shoving them back in. Yes. And then also, Your Honor, I think based on a reasonably prudent police officer in this circumstance, for his own safety and for that of his partner, with three people now, all in very close proximity to him traveling in the car, needed to ascertain just what the object was that he wouldn't let alone to make sure that everything could proceed as it should. Terry points out that it is not limited to just guns, knives, and clubs, but it's also limited to other hidden instruments for the assault of the police officer. There had been no pat-down at this time because this was in response to simply asking what his name was that started this series of events that escalated. So the officer didn't know whether he was armed or not. Maybe the Terry assumption that a pat-down is sufficient is obsolete because your case almost says that you can't tell from a pat-down. Isn't that what you're saying? I think the case law actually in this district as well says if you can't, if there's an object that's suspicious for whatever reason and you can't tell from a pat-down, then yes, the officer should be allowed to secure the situation by determining what that object is. Even though the officer concludes from the pat-down that it's not a weapon? The judge found that. The officer did not say that. Well, I don't, you're not challenging the finding that's clearly erroneous, are you? I'm saying that the court found that there were other things he didn't believe. I think what the court meant was that he didn't believe of the traditional weapon because, Your Honor, in his pocket could have been a destructive device, could have been a hand grenade, could have been a rock that he could have used to hit the officer in the head, and having had no previous pat-down, the officer didn't know if he might have had access to other weapons besides what was in his pocket. So, yes, there are lots of things besides a traditional weapon that could have been there, and I think the district court recognized that. Well, I hadn't thought of a hand grenade, and I hadn't thought of a rock, and I hadn't thought of, I guess you could think of brass knuckles. Yes, sir. Possibility. A roll of quarters. There's just all kinds of things. But he never testified that he felt like a metal object or anything like that, did he? It was so fast. He said that he grabbed his hands and he felt his hands in a hard object. He asked him to show him, and he obviously did not. He said he pulled his hands out just barely out of his pockets and showed him a gum wrapper, some loose change, and a paper clip, which wasn't what he had felt, and then he jammed his hands back in.  And then he asked him to remove his hands from his pockets, and he reached in and took it out. Okay. I think we understand your position. Thank you very much. Thank you. All right. Rebuttal. Thank you, Your Honor. I think the district court was saying that Terry was obsolete. If you look at page 76 of the record, he says the issue needs to be dealt with by the Ninth Circuit and that Terry, this Court holds, also stands for the proposition that now anthrax, et cetera. The distinction I'd like to make between counsel's argument about continuing to search until you find out, in this case, is that in those other cases, the officer said he continued to think it was a weapon until he made that final touch and determination that it was controlled substances rather than a weapon. And those are cited in the reply brief. I won't belabor that point. And then also the concerns that this was not a normal move are not supported by the officer's continued efforts in this case. He did not secure Mr. Molina with handcuffs. Before the pat-down searches, he did not take any other steps to indicate he thought the lump was an officer's safety issue. And also if you look at page 48, the officer said he didn't think he was going to find drugs as well on Mr. Molina. Well, couldn't you just limit this case to its unique facts? Yes. That is, he was instructed to keep his hands out and visible, took them out, put them back in, took them out and then put them back in, all in a matter of apparently a very short period of time. Very short. And, you know, the officer is confronted with a difficult situation as to what to do. And his response was probably an immediate response was simply to put his hand in that pocket to see what was there. He put his hand on the outside of the pocket twice in response to putting the hands, Mr. Molina putting his hands in the pouch. Twice he touches the outside of the pocket. And then on the third time, when he's not satisfied that the objects that are shown to him are would would be the lump that he thought he felt. He goes inside. He puts his hands back in and then the officer goes and reaches in. Correct. Correct. The officer took the steps allowed under Terry. He did the frisk. He he felt he even went inside the pocket. But each time he said it's not a weapon. And that's what the district court found. And that's not clearly erroneous on this record. The district court also found that he did not identify it immediately as controlled substances. All right. OK. Thank you very much. Submitted for decision. Next case is United States versus Taylor. All right. Please. Who is appealing from his one hundred and thirty five month sentence for distribution of cocaine, which sentence was imposed on February 7th of 2003. And it was a resentencing after his first appeal to this court where in March of March 9th of 2000, he was given one hundred and forty month sentence. This court on May 14th, 2002, reversed that with regard to the drug drug quantity, because this court said that that that drug quantity had to be proven by clear and convincing evidence. So this case then went back for resentencing. And in this appeal, while we've raised several issues, the one I want to talk about is the drug quantity, because I don't believe that even at this resentencing, that the drug quantity was established by clear and convincing evidence, because the person that talked about this drug quantity was Manuel Galvin. And as we've argued in this appeal under the McIntyre case from the Seventh Circuit and the Mealy case from the Third Circuit, where sentences have been reversed based on contradictory and conclusory statements without further explanation or details, the district court was then required to go back and do a closer examination. And here we have exactly that.
judges: Tashima, Paez, Bea